UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| In Re: ) | |
| ) | |
| KARL WALTER DICKHAUS, ) | Case No. 09-46294-399 |
| ) | Judge Kathy A. Surratt-States |
| ) | Chapter 7 |
| Debtor. ) | |
| ) | |
| LENNOTH GREENWOOD, and ) | **Adversary No. 09-4213-659** |
| HARRIET GREENWOOD, ) | |
| ) | PUBLISHED |
| Plaintiffs, ) | |
| ) | |
| -v- ) | |
| ) | |
| KARL WALTER DICKHAUS, ) | |
| ) | |
| ) | |
| Defendant. ) | |

## **FINDINGS OF FACT AND CONCLUSIONS OF LAW**

The matter before the Court is Plaintiffs Lennoth Greenwood and Harriet Greenwood's Complaint to Determine Dischargeability of Debt Pursuant to 11 U.S.C. § 523, Debtor's Answer to Complaint to Determine Dischargeability of Debt and Counterclaim for Damages for Violation of the Automatic Stay, Plaintiffs' Trial Brief, Debtor's Trial Brief, Plaintiffs' Motion to Dismiss Debtor's Counterclaim for Damages for Violation of the Automatic Stay, Plaintiffs' Memorandum in Support of Motion to Dismiss Debtor's Counterclaim for Damages for Violation of the Automatic Stay and Debtor's Memorandum in Support of Opposition to Plaintiffs' Motion to Dismiss Debtor's Counterclaim for Damages for Violation of the Automatic Stay. A trial was held on the matter on December 15, 2009 at which all parties were present in person and by counsel. The matter was taken under submission. Upon consideration of the record as a whole, the Court issues the following **FINDINGS OF FACT**:

Plaintiffs Lennoth Greenwood and Harriet Greenwood (hereinafter "Plaintiffs") have a long history with Defendant Karl Dickhaus (hereinafter "Debtor") which dates back to at least April 2004.

Debtor was Plaintiffs' lead attorney in a law suit filed in the U.S. District Court for the Eastern District of Missouri (hereinafter "Federal Law Suit").[1]  Plaintiffs were also represented by at least two other attorneys in connection with the Federal Law Suit.[2]  In said legal representation, Debtor missed certain filing deadlines which caused sanctions to be imposed against Plaintiffs in the amount of $1,221.00.  When co-counsel attempted to apprise Debtor that deadlines were approaching and requested updates as to the case status, Debtor replied that he was lead counsel and wanted no interference.  Debtor did not routinely communicate with Plaintiffs about the progress of their case.  Debtor also failed to retain any experts to provide testimony during trial of the Federal Law Suit.  On or about April 19, 2005, Plaintiffs terminated Debtor as counsel in the Federal Law Suit.  Thereafter, Debtor failed to respond to numerous requests by Plaintiffs that Debtor withdraw as attorney of record and that Debtor send Plaintiffs their legal file.  Debtor filed his motion for leave to withdraw as attorney of record on or about May 6, 2005 which was granted on May 10, 2005.  Plaintiffs did not receive their legal file from Debtor until October 2005, after the Missouri Office of Chief Disciplinary Counsel (hereinafter "OCDC") was involved and itself requested that Debtor return the file.

Trial in the Federal Law Suit began on December 19, 2005.  On December 21, 2005, the jury returned a verdict finding against Plaintiffs.  Plaintiffs were also ordered to pay costs in the amount of $4,219.86, in addition to the aforementioned sanctions.

Proceedings by the OCDC were initiated in front of the Disciplinary Hearing Panel in September of 2006 against Debtor regarding Debtor's representation of Plaintiffs.  On October 13, 2006, the Disciplinary Hearing Panel issued a decision wherein it found the following: that Debtor violated Rule 4-1.3 and Rule 4-1.4 of the Rules of Professional Conduct in failing to act with

---

[1] Plaintiffs brought suit against their crop insurer and Sharon Burgher regarding an insurance claim and property valuation dispute.

[2] Plaintiffs were also represented by Fredrich Cruse and Richard McEachern.

reasonable diligence and promptness in the representation of Plaintiffs; Debtor violated Rule 4-8.1 of the Rules of Professional Conduct in that Debtor failed to respond to both Plaintiffs' and the OCDC's requests for the return of the file to Plaintiffs; and, pursuant to Section 9.22(f) of the American Bar Association Standards for Imposing Lawyer Sanctions, which provides in part that submission of false evidence, false statements or other deceptive practices during a disciplinary process is an aggravating factor, sanctions against Debtor were warranted. While concluding the above, the OCDC Disciplinary Hearing Panel also commented that it was unclear whether Plaintiffs' claims in the Federal Law Suit had merit.[3]

On December 19, 2006, the Supreme Court of Missouri issued an *en banc* order in which the Court found that Debtor had indeed violated the aforementioned Rules of Professional Conduct. Debtor was suspended from the practice of law for a period of six months—the suspension was stayed pending completion of certain actions within a six month probationary period.[4]

On October 15, 2007, Plaintiffs filed a legal malpractice suit in Circuit Court of Macon County, Missouri for damages as a result of Debtor's representation of Plaintiffs (hereinafter "State Court Action"). Plaintiffs alleged that Plaintiffs lost the Federal Law Suit as a direct result and consequence of Debtor's apathetic legal representation of Plaintiffs which adversely affected Plaintiffs' ability to effectively prosecute their case. Debtor neither filed an answer nor appeared in the State Court Action. On or about April 4, 2008, a default judgment was entered against Debtor and in favor of Plaintiffs in the amount of $1,139,500.00 in damages and $75,000.00 in punitive damages (hereinafter "Malpractice Judgment").

---

[3] Plaintiffs' Exhibit 1, pp. 25-6; Disciplinary Hearing Panel Decision, Oct. 13, 2006, pp. 6-7.

[4] Debtor was required to complete nine hours of continuing legal education in the area of ethics and was also required to "engage in no violations of the Rules of Professional Conduct during the probationary period". See Order, December 19, 2006 (Order by Supreme Court of Missouri incorporating the recommendation of the Disciplinary Hearing Panel). Debtor complied with the requirements of the probation.
In 2008, Debtor was again suspended from the practice of law for professionalism violations that do not concern this matter. Debtor has since been disbarred.

On or about January 5, 2009, in enforcement of the Malpractice Judgment, Plaintiffs issued an execution which directed the Sheriff of St. Louis County, Missouri (hereinafter "Sheriff") to seize Debtor's 2001 Mercedes SLK320 (hereinafter "Execution"). The Sheriff took possession of the 2001 Mercedes SLK320 (hereinafter "Vehicle") on or about April 2, 2009. The Vehicle was to be sold in a Sheriff's sale on July 2, 2009.

Debtor filed his Chapter 7 Bankruptcy Case on July 1, 2009, the eve of the aforementioned Sheriff's sale. Debtor valued the Vehicle at $7,000.00 on his Schedule B and claimed $5,216.00 in exemptions against the Vehicle. That same day, Debtor's counsel sent the Sheriff a letter which informed the Sheriff of Debtor's Bankruptcy filing and the automatic stay (hereinafter "Sheriff Letter"). In the Sheriff Letter, Debtor's counsel requested that the Vehicle be turned over to either Debtor or the Chapter 7 Trustee (hereinafter "Trustee"). The Vehicle remained in the Sheriff's possession. A copy of the Sheriff Letter was sent to Plaintiffs' counsel as well as another letter requesting that Plaintiffs release the Execution. Plaintiffs did not release the Execution. The Vehicle was not sold in the Sheriff's sale.

Plaintiffs communicated with Trustee as to the location of the Vehicle both before and after the Section 341 Meeting of Creditors which took place on August 3, 2009. On August 14, 2009, the Trustee filed a report of no distribution and abandoned the bankruptcy estate's interest in the Vehicle. On September 23, 2009, Plaintiffs filed a Motion for Relief from the Automatic Stay to permit the Sheriff to sell the Vehicle. On October 1, 2009, Debtor filed a Motion to Avoid Plaintiffs' Lien on the Vehicle. On October 27, 2009, the Court entered an Order wherein Plaintiffs were granted relief from the automatic stay and Plaintiffs' lien against the Vehicle was avoided.[5] In effect, the Sheriff is permitted to go forth with the sale of the Vehicle, however, the first $5,612.00 in proceeds from the sale belong to Debtor. As of December 15, 2009, the Vehicle had not been

---

[5] See Order Granting Motion for Relief from Stay, Motion to Determine Exemptions and Motion to Avoid Lien, re: Mtns 21 and 28, October 27, 2009.

-4-

sold. Debtor contends that the Vehicle was his primary means of transportation and as such, he should have had access to it. Debtor filed a counterclaim against Plaintiffs alleging damages in excess of $5,000.00 as a result of Plaintiffs' decision not to release the Execution and allow Debtor's use of the Vehicle.

Plaintiffs argue that Debtor's poor legal representation in the Federal Law Suit, poor communication with Plaintiffs, failure to engage experts and the delayed return of Plaintiffs' legal file amount to wilful and malicious conduct. Plaintiffs submit that under Section 523(a)(6) of the Bankruptcy Code, the Malpractice Judgment is nondischargeable. Plaintiffs further deny that Plaintiffs violated the automatic stay and that Debtor is entitled to any relief beyond that stated in the Court's October 27, 2009 Order. Plaintiffs argue that in the counterclaim Debtor fails to state a claim upon which relief can be granted.

Debtor denies that his conduct rises to the level of wilful and malicious within the meaning of Section 523(a)(6) and therefore, Debtor's debt to Plaintiffs should be discharged. Debtor admits that Plaintiffs' legal file could have been sent to Plaintiffs sooner however Debtor disputes that this was as damaging as Plaintiffs purport. Debtor argues that Plaintiffs were at all times aware of much of the pertinent information in the file either through copies of documents or because Plaintiffs were themselves the source of the information. On the counterclaim, Debtor submits that Plaintiffs' failure to automatically release the Execution upon Debtor's bankruptcy filing is a violation of the automatic stay. Debtor argues that this failure has caused Debtor harm in excess of $5,000.00 and thus, Debtor asserts damages in that amount plus any punitive damages as the Court deems appropriate.

## **JURISDICTION**

This Court has jurisdiction over the parties and subject matter of this proceeding under 28 U.S.C. §§ 151, 157, and 1334 (2009) and Local Rule 81-9.01(B) of the United States District Court for the Eastern District of Missouri. This is a core proceeding under 28 U.S.C. §157(b)(2)(I) and (O)

(2009). Venue is proper in this District under 28 U.S.C. § 1409(a) (2009).

## CONCLUSIONS OF LAW

The first matter before the Court is whether Debtor's legal representation of Plaintiffs amounts to wilful and malicious conduct such that the debt owed by Debtor to Plaintiffs should be deemed nondischargeable pursuant to Section 523(a)(6).  Second, the Court must determine whether Debtor is entitled to relief with regards to the Vehicle pursuant to Debtor's counterclaim.

The Bankruptcy Court is a court of equity wherein a strong arm need not dominate the decision process at all times.  A lenient gavel is not uncommon when such leniency does not escape the scope of the Bankruptcy Code.  In the matter at hand, a lenient or strong gavel lead to the same result.  Under the law governing the standard for wilfulness and maliciousness in the Eighth Circuit, the Court regretfully concludes that the debt is dischargeable.

Debts arising from wilful and malicious injury by a debtor are excepted from discharge under Section 523(a)(6). 11 U.S.C. § 523(a)(6) (2009).  Wilfulness and maliciousness are two distinct elements of Section 523(a)(6).  *In re Patch*, 526 F.3d 1176, 1180 (8th Cir. 2008) *citing In re Scarborough,* 171 F.3d 638, 641(8th Cir. 1999), *cert. denied,* 528 U.S. 931, 120 S.Ct. 330, 145 L.Ed.2d 258 (1999).  The Eighth Circuit Court of Appeals has set a high bar for certainty of harm regarding wilful and maliciousness for the purposes of Section 523(a)(6).  *In re Adams*, 349 B.R. 199, 203 (Bankr. W.D. Mo. 2006) *citing In re Hartley,* 869 F.2d 394 (8th Cir. 1989)(*citations omitted*).  To prove wilfulness, the creditor must show by a preponderance of the evidence that debtor intended the injury, not just a deliberate or intentional act leading to injury. *Kawaauhau v. Geiger*, 523 U.S. 57, 61-62, 118 S.Ct. 974, 977, 140 L.Ed.2d 90 (1998); *Grogan v. Garner,* 498 U.S. 279, 280, 111 S.Ct. 654, 655, 112 L.Ed.2d 755 (1991).  Debts arising from recklessly or negligently inflicted injuries do not fall within the compass of Section 523(a)(6). *Kawaauhau,* 523 U.S. at 64*,* 118 S.Ct. at 978.  "If the debtor knows that the consequences are certain, or substantially certain, to result from his conduct, the debtor is treated as if he had, in fact, desired to produce those

consequences." *In re Patch,* 526 F.3d at 1180. Thus, to prove wilfulness under Section 523(a)(6), Plaintiffs are required to prove by a preponderance of the evidence either that Debtor desired for Plaintiffs to lose the Federal Law Suit as a consequence of Debtor's actions or that Debtor was substantially certain that Plaintiffs would lose the Federal Law Suit as a consequence of Debtor's actions. The facts do not support a conclusion in the affirmative. Debtor did not return the majority of Plaintiffs' calls and electronic mail messages. Debtor missed filing deadlines which caused Plaintiffs to be sanctioned in the amount of $1,221.00. Debtor did not retain a single expert witness for trial. Debtor failed to promptly remove himself as attorney of record and Debtor was less than diligent in forwarding Plaintiffs' legal file upon his termination. It is beyond the facts for this Court to conclude that Debtor refused to do the above with the intent to cause Plaintiffs to lose the Federal Law Suit.

The question then becomes the following: Was Debtor substantially certain that Plaintiffs would lose the Federal Law Suit when Debtor did not actively communicate with Plaintiffs, Debtor did not timely file documents with the Federal Court, Debtor did not engage experts, Debtor did not timely remove himself as the attorney of record and Debtor did not timely provide Plaintiffs with their legal file? If this were the end of the story, the inclination would be to answer this question in the affirmative. However, after Debtor's termination, Plaintiffs were ultimately represented by additional counsel that was involved in the Federal Law Suit from its inception. Plaintiffs had duplicate copies or were themselves the source of much of the information in the legal file. Further, Debtor was terminated over six months before trial. The Court notes that the trial in the Federal Law Suit was one by jury, for which the only certainty is the uncertainty of outcome. Plaintiffs could have presented their case without procedural flaw and with all the litigation tactics fitting to the best of trials and still, Plaintiffs could have been unsuccessful. The Court also considers the fact that the OCDC Disciplinary Hearing Panel questioned whether Plaintiffs' claims in the Federal Law Suit had merit. The Court does not dispute that Debtor's actions exponentially increased Plaintiff's likelihood

of failure. However, based on the facts, this Court concludes that Debtor's actions constitute negligence and perhaps recklessness—which undoubtedly makes Debtor liable for legal malpractice—but Debtor did not act wilfully within the meaning of Section 523(a)(6).

To prove malice, the creditor must prove debtor's conduct was specifically targeted at the creditor. *In re Madsen,* 195 F.3d 988, 989 (8th Cir. 1999) *citing In re Long,* 774 F.2d 875, 881 (8th Cir. 1985). Again, Debtor's legal representation is more a testament to Debtor's apathy rather than intentional conduct targeted at Plaintiffs. The standard of maliciousness is not met in this case. Though Debtor was aware of the Rules of Professional Conduct and the procedural rules of the Federal Court, his violation thereof amounts to legal malpractice, not an intentional tort.

The Court must now decide Debtor's counterclaim. Section 362 states that upon filing of a bankruptcy petition, there is an automatic stay against any act to exercise control over property of the estate or to continue proceedings to recover a claim against the debtor that arose before the commencement of the bankruptcy case. See 11 U.S.C. § 362(a) (2009). Section 542 states that

> ...[A]n entity, other than a custodian, in possession, custody, or control, during the case, of property that the trustee may use, sell, or lease...or that the debtor may exempt under section 522 of this title shall deliver to the trustee, and account for, such property or the value of such property, *unless such property is of inconsequential value or benefit to the estate*.

11 U.S.C. § 542(a) (2009) *(emphasis added)*. Trustee may have been able to use, sell or lease the Vehicle. Moreover, while Debtor did not claim an exemption as to the entire value of the Vehicle, Debtor did claim an exemption in the amount of $5,612.00.

While Plaintiffs did not have possession of the Vehicle, Plaintiffs did indeed have control of the Vehicle as holder of the Execution. Plaintiffs at all times acted in consort with the desires of Trustee —advising Trustee of the location of the Vehicle both before and after the Section 341 Meeting of Creditors.

The Court has already considered the above in its Order dated October 27, 2009, wherein the Court granted Plaintiffs relief from the automatic stay and held that Debtor's exemptions in the Vehicle were valid. Plaintiffs were ordered to turn over the first $5,612.00 from the proceeds of the sale of the Vehicle to Debtor, after allowance to the Sheriff of his costs of sale. Debtor's only interest in the Vehicle is to the extent of the allowed exemptions in the amount of $5,612.00. Debtor's counterclaim fails to state a claim upon which relief can be granted.

By separate Order the relief requested in Plaintiffs' Complaint will be denied and the relief requested in Debtor's counterclaim will be denied.

/s/ Kathy A. Surratt-States
KATHY A. SURRATT-STATES
United States Bankruptcy Judge

DATED: March 16, 2010
St. Louis, Missouri

Copies to:

Office of the United States Trustee
Thomas F. Eagleton U.S. Courthouse
111 South 10th Street, Suite 6.353
St. Louis, MO  63102

Peter H. Love
Goffstein, Raskas et al.
7701 Clayton Rd.
St. Louis, MO 63117

Edward J. Karfeld
611 Olive St., Ste. 1640
St. Louis, MO 63101

Lennoth and Harriet Greenwood
34111 State Hwy V
Anabel, MO 63431

Karl Walter Dickhaus
61 Chaminade
Saint Louis, MO 63131

-10-